UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| **Case No.** | CV 24-09023-MWF (SPx) | **Date:** | December 17, 2024 |
| **Title:** | Kyle Jackson v. Thongchai Jaidee, et al. | | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:
Rita Sanchez

Court Reporter:
Not Reported

Attorneys Present for Plaintiff:
None Present

Attorneys Present for Defendant:
None Present

**Proceedings (In Chambers):** ORDER RE: PLAINTIFF'S MOTION TO REMAND [17]

Before the Court is a Motion to Remand (the "Motion"), filed by Plaintiff and Counter Defendant Kyle Jackson on November 15, 2024 (Docket No. 17). Defendant and Counter Claimant Thongchai Jaidee filed his Opposition to the Motion to Remand on November 18, 2024. (Docket No. 22). Jackson filed his Reply on December 2, 2024. (Docket No. 25).

The Court has read and considered the papers on the Motion and held a hearing on **December 16, 2024**.

For the reasons that follow, the Motion is **DENIED**.

## I.   BACKGROUND

Jackson commenced this action in Los Angeles County Superior Court by filing the Complaint on March 11, 2024. (Notice of Removal, Ex. B (Docket No. 1-2)). Jaidee did not respond to the Complaint, and the Clerk of Court entered default against Jaidee on May 28, 2024. (Notice of Removal, Ex. H (Docket No. 1-8). Jackson represents in the Motion that "[b]ecause California law requires an allegation of specific monetary damage for default judgment, Plaintiff filed a First Amended Complaint ('FAC') on August 19, 2024." (Motion at 5; *see* FAC (Docket No. 1-11)). Jaidee was served with the FAC on September 18, 2024. (Motion at 5). Whereas the initial Complaint sought an indeterminate amount of damages, the FAC sought damages in the total amount of $232,000 based on the following allegations.

---

**CIVIL MINUTES—GENERAL**                                                                                                1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 24-09023-MWF (SPx)          **Date:** December 17, 2024
**Title:** Kyle Jackson v. Thongchai Jaidee, et al.

---

Jackson is a California resident. (*Id.* ¶ 1). Jaidee is a professional golfer who plays in PGA Tour events in California, and who resides in Thailand. (*Id.* ¶ 2). The parties met through golfing together, whereupon "Jaidee learned that Jackson was involved in the cannabis industry and had particular expertise in growing and harvesting marijuana plants." (*Id.* ¶ 6). In or about December 2021, Jaidee informed Jackson that he and his family were beginning a medical marijuana company. (*Id.* ¶ 7). Jaidee asked Jackson to join the business as a grower. (*Id.*). In a November 2022 telephone conversation, the parties agreed that Jackson would go to Thailand and work for Jaidee's business for at least one year as a grower. (*Id.*). Jaidee agreed to pay Jackson $5,000 per month and to compensate Jackson with 50% of the venture's profits. (*Id.*). The agreement was apparently never reduced to writing.

Jackson went to Thailand on March 16, 2023. (*Id.* ¶ 8). "After about four months" of work, "Jaidee told Jackson to leave Thailand within a few days" because he could not secure a visa for Jackson to remain in the country. (*Id.*). Jaidee "promised to pay Jackson for all sums due Jackson, including his return airfare." (*Id.*). At that time, Jaidee had paid Jackson for one month worth of work—$5,000. (*Id.*). Jackson returned to California on July 23, 2023. (*Id.*).

Jaidee did not pay Jackson outside of that initial $5,000 payment. (*Id.* ¶ 9). Jackson alleges on information and belief that Jaidee continues to profitably operate the marijuana farm and that the explanation regarding Jackson's visa was a ruse to force Jackson to depart the country. (*Id.*).

Though the FAC, Jackson brings two causes of action—the first for breach of contract, and the second for fraud. (*Id.* ¶¶ 5-18). Jackson seeks $55,000 in lost wages for the eleven months he was not paid, $165,000 in lost profits based on the sale price and costs associated with producing the marijuana harvests, and $2,200 in unpaid airfare. (*Id.* ¶ 11). Jackson also seeks punitive damages, prejudgment interest, and costs. (*Id.* at 5).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 24-09023-MWF (SPx)          **Date:** December 17, 2024
**Title:**      Kyle Jackson v. Thongchai Jaidee, et al.

Jaidee filed a Notice of Remand on October 18, 2024, 30 days after Jackson filed the FAC. (Notice of Removal (Docket No. 1)). Jaidee removed the action on the basis of diversity jurisdiction. (*Id.* ¶¶ 24-31).

Jackson now brings the Motion, arguing that removal was improper because it did not occur within 30 days of service of the Complaint. (Motion at 7 (citing 28 U.S.C. § 1446(b))). (Defendant initially maintained that he was not actually served, but does not make that argument now, as Jackson has video evidence of service. (Motion at 7-8).) Jackson argues that it was evident from the Complaint that more than $75,000 was in controversy, such that Jaidee knew or should have known the grounds for removal upon the filing of the Complaint in March of 2024. (*Id.* at 10-13). If so, Defendant's removal was untimely, as it occurred approximately six months after the FAC was filed. (*Id.* at 7).

## II.    LEGAL STANDARD

### A.    Motion to Remand

In general, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]" 28 U.S.C. § 1441(a). A removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684-85 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"). If there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remanding the action to state court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). Indeed, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003) ("Subject matter jurisdiction may not be waived, and, indeed, we have held that the district court must remand if it lacks jurisdiction.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 24-09023-MWF (SPx) | **Date:** December 17, 2024 |
| **Title:** Kyle Jackson v. Thongchai Jaidee, et al. | |

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008). Therefore, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.* (emphasis in original).

### III.  ANALYSIS

Jackson acknowledges that the initial Complaint placed an indeterminate amount in controversy; this was the reason that his filing the FAC was necessary. (Motion at 5). But, Jackson argues, the amount placed in controversy would have been known to Jaidee, who would have reason to know what 50% of the profit split from the harvests were, and who knew the conditions of Jackson's employment. (*Id.* at 10-13). Jackson essentially argues that a defendant cannot put his head in the sand and ignore "the basic facts within his personal knowledge." (Reply at 3). Because his claim for unpaid wages totals $55,000 in the FAC and the unpaid airfare does not get him to $75,000, Jackson necessarily relies on his estimation of the going per-kilogram marijuana price in Thailand during the time of Jaidee's harvests and estimated costs to produce the harvests. (*See* Motion at 11; Declaration of Kyle Jackson ("Jackson Dec.") (Docket No. 18 ¶¶ 4-6)).

The Ninth Circuit has used a "two pathway" approach to determining the propriety of remand:

> [S]ection 1446(b) identifies two thirty-day periods for removing a case. The first thirty-day removal period is triggered "if the case stated by the initial pleading is removable on its face." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives "a copy of an amended pleading, motion, order or other paper" from which removability may first be ascertained. 28 U.S.C. § 1446(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 24-09023-MWF (SPx) | **Date:** December 17, 2024 |
| **Title:** Kyle Jackson v. Thongchai Jaidee, et al. | |

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010). Jackson effectively, though not explicitly, asks for an exception to this general rule to apply—that the Court find that a pleading which did not clearly set forth the claimed damages should nonetheless have indicated to Jaidee that the case was clearly removable.

The ruling here must be determined by the Ninth Circuit's analysis in *Harris*, and the cases that followed it, which are directly on point. Jackson's attempts to distinguish or weaken the holding of *Harris* fail, as explained below.

*Harris* posed the following question: "[I]s removability determined by the face of the initial pleading or by defendant's knowledge, constructive or otherwise, of the requisite jurisdictional facts?" *Harris*, 425 F.3d at 690. *Harris* established a "bright-line approach" that jurisdiction is determined based on "the four corners of the initial pleading or subsequent paper" and that the grounds for removability "must be revealed affirmatively" to trigger the 30-day period for removal. *Id.* at 695-97 (quoting *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997)). The *Harris* court found this approach necessary to "bring[] certainty and predictability to the process," "avoid[] gamesmanship," and "avoid[] the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Id.* at 697. And though the litigated issue in *Harris* concerned the citizenship requirement for diversity jurisdiction and not the amount in controversy (*see* Reply at 3), the holding was not limited to citizenship determinations. *See Harris*, 425 F.3d at 697 (citing *Lovern* and noting that defendants will have incentive and time to investigate the amount in controversy even under a bright-line approach).

Jackson presses the point that *Harris* did not concern the amount in controversy requirement, but largely neglects Ninth Circuit law after *Harris* which embraced its approach. In *Carvalho*, for instance, plaintiff sent defendant a pre-complaint demand letter seeking $25,000. *Id.* at 883. Plaintiff then argued that, though her complaint was indeterminate as to the amount in controversy, defendant should have known that more than the $5,000,000 jurisdictional minimum under CAFA was in controversy because there were 500 potential plaintiffs and defendant knew that plaintiff valued her claim at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 24-09023-MWF (SPx)          **Date:** **December 17, 2024**
**Title:**     Kyle Jackson v. Thongchai Jaidee, et al.

$25,000 ($25,000 x 500 = $12,500,000). *Id.* at 885. The court in *Carvalho* rejected this argument, finding that "[w]e would eviscerate our holding in *Harris* if we required defendants to rely on pre-complaint documents to ascertain whether a case stated by an indeterminate initial pleading is actually removable." *Id.* at 886. More recently, the Ninth Circuit has again reaffirmed *Harris* in *Dietrich v. Boeing Co.*, 14 F.4th 1089 (9th Cir. 2021). Jackson's argument that *Dietrich* concerns the second pathway for removability, whereas this matter concerns the first, is well-taken. (*See* Reply at 6). However, *Dietrich*'s positive citation to *Harris* suggests that case's continued vitality. *See id.* at 1095 ("We adhere to *Harris*'s principles of certainty, fairness, efficient dispute resolution, and federalism . . .").

       Jackson cites to *Banta v. American Medical Response, Inc.*, No. CV 11-03586-GAF (RZx), 2011 WL 2837642 (C.D. Cal. July 15, 2011) for the proposition that "'where a defendant in the exercise of diligence could readily ascertain, on the basis of information within its (often sole) possession' that there are grounds for removal, the removal deadline is triggered." (Reply at 5 (quoting *Banta*, 2011 WL 2837642, at *2)). Jackson does not cite those cases that explicitly declined to follow or rejected *Banta*. *See, e.g.*, *Trahan v. U.S. Bank Nat. Ass'n*, No. C 09-03111 JSW, 2014 WL 116606, at *4 (N.D. Cal. Jan. 13, 2014) (rejecting *Banta* and reiterating that "a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability") (quoting *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125) (emphasis omitted); *Chavarria v. Mgmt. & Training Corp.*, No. 16-cv-617-H (RBB), 2016 WL 11621563, at *3 n.3 (S.D. Cal. May 13, 2016) ("[T]he *Banta* court failed to consider the Ninth Circuit's decision in *Carvalho*, which did involve a complaint that was indefinite as to the amount-in-controversy and reiterated *Harris*'s holding that removability under section 1446(b)(1) is ascertained 'from "examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."'") (quoting *Carvalho*, 629 F.3d at 886).

       To the extent Jackson argues that *Harris* does not apply because it did not concern the amount in controversy requirement, the same logic applies to his positive citation of *White v. Santa Clara Valley Water District*, No. 20-cv-04242-VKD, 2020

---

**CIVIL MINUTES—GENERAL**                        6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 24-09023-MWF (SPx)          **Date:**  December 17, 2024
**Title:**     Kyle Jackson v. Thongchai Jaidee, et al.

WL 6561358, at *4 (N.D. Cal. Nov. 9, 2020).  There, the court found *Harris* distinguishable because, in *White*, the plaintiff failed only to allege that the water district had "sole ownership and control of the Dam." *Id.* at *3-*4.  Defendant knew that it controlled the subject dam, and the point was indisputable. *Id.* at *4.  The appropriate parallel to ***this action*** would be if Jackson failed to allege that Jaidee owned and operated the marijuana harvesting operation.  Instead, Jackson failed to affirmatively allege subject-matter jurisdiction based on the per-kilogram price of marijuana in Thailand and costs associated with marijuana production and Jaidee's purported subjective knowledge of those facts.  To put it mildly, the cases are quite different.

     The relevant jurisdictional fact in *White* concerned the binary question of ownership rather than the thornier amount-in-controversy determination.  Another case that Jackson relies upon has the same issue.  In *Rhodan v. Job Options, Inc.*, No. 19-CV-1141-CAB-BGS, 2019 WL 3887351 (S.D. Cal. Aug. 19, 2019), the ground for federal jurisdiction concerned plaintiff's employment at Camp Pendleton, a federal enclave. *Id.* at *1.  The defendants argued that the period for removal was not triggered by the complaint or amended complaint because they did not contain allegations that the plaintiff was employed by Camp Pendleton. *Id.* at *2.  The defendants sought to remove once that affirmative allegation was made in the second amended complaint. *Id.*  This attempt was rejected, largely because, by the time of removal, the defendants had already provided to the plaintiff discovery documents that proved the plaintiff worked at Camp Pendleton. *Id.*  The production of those documents proved that the defendants had knowledge of the plaintiff's employment all along and meant that the concerns animating *Harris* were not present.  Again, *Harris* adopted its "bright-line approach" to "avoid[] the spectre of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Harris*, 425 F.3d at 697.  Here, however, there is no affirmative indication that Jaidee knew the per-kilogram price of marijuana in Thailand as of a certain date.  He has certainly produced no documents to that effect, so far as the Court knows.  Finding jurisdiction would require inquiries into subjective knowledge that the *Harris* court rejected.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 24-09023-MWF (SPx)          **Date:** December 17, 2024
**Title:**     Kyle Jackson v. Thongchai Jaidee, et al.

Jackson also cites to *White* for the proposition that "[c]ourts, including the Ninth Circuit, have held that '[section] 1446(b)(3) applies only where a voluntary act of the plaintiff brings about a change that renders the case removable.'" *White*, 2020 WL 6561358, at *4 (quoting *Busch v. Jakov Dulcich & Sons LLC*, No. 15-CV-00384-LHK, 2015 WL 3792898, at *4 (N.D. Cal. June 17, 2015) (cleaned up)). There, the defendant "ha[d] not identified any act by the plaintiffs that triggered removal." *Id.* Jackson fails to explain the relevance of this passage or why filing an amended complaint is involuntary. Indeed, the filing of an amended complaint is a run-of-the-mill scenario in which defendants may remove, if appropriate.

Jackson argues that Jaidee needed only to make a simple calculation that could have easily been done upon service of the initial Complaint, and that the removal statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001)). Jackson selectively quotes the next sentence of *Kuxhausen*, which reads in full: "Multiplying figures ***clearly stated*** in a complaint is an aspect of that duty." *Id.* (emphasis added). Had Jackson initially alleged the profits of a marijuana harvest, the associated costs, and the number of harvests in his Complaint, then the answer may be different—simple arithmetic would be all that was required. But Jackson did not provide any clear figures in the Complaint.

Similarly, *Hsueh v. Bankers Life and Casualty Co.*, 421 F. Supp. 3d 937 (S.D. Cal. 2019), does not advance Jackson's argument. There, plaintiffs provided defendants with an estimate of damages. *Id.* at 942. Then, the class size increased by about 55% because "[t]he class certification order both enlarged class membership and extended the class period." *Id.* As a result of the class expansion after the damages estimate, the defendants should have understood that the jurisdictional minimum was met, because it required multiplying the prior damages estimate by the approximately 55% expansion. ***That*** is what the *Hsueh* court meant by writing that "removability could be ascertained from the class certification order without an investigation." *Id.* Ultimately, *Hsueh* articulates another variation on the rule about multiplying clear figures, which is not applicable here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  CV 24-09023-MWF (SPx)    **Date:**  December 17, 2024
**Title:**     Kyle Jackson v. Thongchai Jaidee, et al.

Jackson's citations to *Rodriguez v. The Boeing Co.*, No. CV 14-04265-RSWL (AGRx), 2014 WL 3818108 (C.D. Cal. Aug. 1, 2014), and *Carter v. Mae*, No. SACV 14-01754-CJC, 2014 WL 7339208 (C.D. Cal. Dec. 23, 2014), are also unavailing.  In *Rodriguez*, the plaintiff alleged how long he worked for the company and his position during that time, but not his "specific salary."  *Rodriguez*, 2014 WL 3818108, at *5.  The court found that the defendant should have known the plaintiff's salary, because they were his long-time employer and would have known the approximate compensation for an employee of that kind.  *Id.*  If Jackson's salary alone could meet the jurisdictional minimum, then perhaps this case would be governed by *Rodriguez*.  But as this Court has previously found "Plaintiff points to no case in which this reasoning has been extended beyond the employment context, and the Court declines to do so here."  *TAAD Grp., Inc. v. Hanover Ins. Co.*, No. CV 20-06914-MWF (AFMx), 2020 WL 8574973, at *3 (C.D. Cal. Dec. 16, 2020).  *Carter* is a similar case in which a plaintiff sued her former employer, listed her job title, and additionally specified that the amount of punitive damages she sought were in excess of $25,000.  *See Carter*, 2014 WL 7339208, at *2.  Even now, Jackson does not provide specificity as to the amount of punitive damages he seeks, and the employment aspects of the case are distinguishable for the reasons already described.

Finally, while Jackson notes that Jaidee is in charge of the records that would specifically determine the profits from the venture (*see* Reply at 7-8), that argument is unpersuasive.  As a matter of practical litigation, there was nothing to prevent Jackson from alleging in the first instance what he alleges now—that on his information and belief, and on the basis of his experience in the industry, profits from the venture were well in excess of $75,000.  Jackson did not allege that until the FAC, and Jaidee's removal was therefore proper.

Accordingly, the Motion is **DENIED**.

IT IS SO ORDERED.